# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00515-CV

---

**Osman M. Alikhan, Appellant**

**v.**

**Sara Jo Alikhan, Appellee**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-17-001924, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Osman M. Alikhan appeals from the trial court's final divorce decree that was based on a partial mediated settlement agreement between Osman and Sara Jo Alikhan and an arbitrator's amended award. Osman argues before this Court that the arbitration agreement and arbitration rules for the arbitration proceedings are unconscionable and therefore that the trial court committed error in basing the divorce decree on the arbitrator's award. However, the record does not show that the alleged error was preserved. *See* Tex. R. App. P. 33.1(a) (requiring error preservation as prerequisite to presenting complaint for appellate review). We therefore affirm.

## BACKGROUND[1]

After entering into a premarital agreement and a binding arbitration agreement, Osman and Sara married in 2013 and had two children during their marriage. In 2017, Osman petitioned for divorce. Osman then moved to compel arbitration before a neutral arbitrator "to be appointed by The Islamic Society of North America (ISNA), for a binding decision," based on their premarital agreement. At a hearing, the parties recited and orally assented in open court that they agreed to attend arbitration with Paul Davis as arbitrator in lieu of an ISNA arbitrator and that they had agreed to a temporary arrangement as to the children "to get us from today until we are able to get into arbitration." When the court asked who would prepare the temporary orders, Osman's counsel agreed to draft the orders.

The parties then signed the agreed temporary orders that specified, among other things, that the "case shall be submitted to binding arbitration on all issues with Judge Paul Davis" under "section 154.027 of the Texas Civil Practice and Remedies Code," "the Texas General Arbitration Law," and "sections 6.601 and 153.0071 of the Texas Family Code." *See* Tex. Civ. Prac. & Rem. Code §§ 154.027, 171.001–.098; Tex. Fam. Code §§ 6.601, 153.0071. The temporary orders also stated: "Each party and counsel will be bound by the Family Law Arbitration Agreement and Family Law Arbitration Rules provided by the arbitrator. Each party and counsel are ORDERED to cooperate with the arbitrator."

On July 18, 2018, the parties and the arbitrator signed the family law arbitration agreement and rules, which included that "[t]he parties acknowledge that there will be no court reporter and that the decision of the Arbitrator is binding and final." The parties also signed an

---

[1] The procedural background is undisputed and drawn from the clerk's and reporter's records filed in this appeal.

2

addendum that they "have agreed to attempt to mediate some of the issues in the case with Paul Davis functioning as a mediator prior to beginning the arbitration hearing" and "that all information shared with Paul Davis during the mediation phase of the case will remain confidential" but "that Paul Davis may use any information shared with him, either in the mediation phase or in the arbitration phase, in arriving at any decision he makes in the arbitration." The mediation occurred on July 18 and arbitration occurred on July 18 and 19.

Also on July 18, the parties signed a partial mediated settlement agreement that resolved many of the issues and filed it with the court the next day. In the agreement, the parties expressly agreed that "[e]ach signatory to this settlement has entered into this settlement freely and without duress after having consulted with the professionals of his or her choice," "[t]his stipulation is signed voluntarily," and "either party is entitled to final judgment on the terms herein." On August 2, the arbitrator signed his award, noting in the award that both parties and their counsel were present and that arbitration was conducted pursuant to the temporary orders, the family law arbitration agreement and rules, and the addendum. The next day, the arbitrator signed an amended award "to correct a mathematical error in the spreadsheet." On August 6, Sara offered the partial mediated settlement agreement and the arbitrator's amended award into evidence at a hearing,[2] it was admitted, and the trial court ruled from the bench:

> [Y]our divorce is granted. Your community estate is divided in the manner found by the arbitrator pursuant to you and your ex-husband's agreement. And the children, the conservatorship, support, and visitation is awarded in the best interest of the children in the manner decided by your arbitrator.

---

[2] Osman states in his opening brief before this Court that he did not attend this hearing "because he was unaware of the prove up."

3

On August 23, Osman filed a motion to modify, correct, or reform the arbitration award, disputing the factual grounds for the arbitrator's amended award. In his motion, Osman stated as background that "[t]he arbitration was conducted in accordance with the parties' agreement" and attached signed copies of the family law arbitration agreement and rules and the addendum as an exhibit. Osman did not raise any concerns with the agreement or addendum in his motion.

On October 29, new counsel for Osman appeared, and Osman moved to substitute counsel. The next day, Osman filed an application to vacate the arbitrator's amended award, arguing that the award "was obtained by corruption, fraud or other undue means." *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(1) (providing that court shall vacate award on application of party if award "was obtained by corruption, fraud, or other undue means"). Specifically, Osman complained that on the day of arbitration—July 18—he was presented with the family law arbitration agreement and rules, which provided that "[t]he parties acknowledge that there will be no court reporter." Because he was bound by the arbitration rules pursuant to the agreed temporary orders, he claimed that "the rules presented by the Arbitrator on the day of the Arbitration constituted essentially an adhesion contract that the parties had no choice but to accept" and were "procedurally unconscionable because it deprived Osman [] of his right to have the arbitration proceedings recorded." On November 16, the court granted the motion for substitution of counsel, but did not mention or address the application to vacate.

The record indicates that little activity in the case occurred until May 2, 2019, when Osman's new counsel filed a motion to withdraw from representing Osman, and Sara requested that the court sign the final divorce decree based on the arbitrator's amended award. On May 8, the court granted the motion to withdraw and signed the final divorce decree. The

4

final divorce decree notes that on August 6, 2018, the trial court "rendered judgment on the Partial Mediated Settlement Agreement and the Amended Award of the Arbitrator, and granted the parties a divorce"; "[t]he making of a record of testimony was governed by the Agreed Arbitration Order Regarding Family Law Arbitration agreement and Family Law Arbitration (and addendum) Rules"; and "[a] record of testimony was not taken at the arbitration." The final divorce decree does not mention or discuss Osman's application to vacate the arbitration award but does include a Mother Hubbard clause stating "that all relief requested in this case and not expressly granted is denied." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203 (Tex. 2001) (explaining that "Mother Hubbard" clause in judgment is "the statement, 'all relief not granted is denied', or 'essentially those words'").

Osman filed a motion for a new trial, which was overruled by operation of law. In his motion, he asserted that "the evidence is legally and factually insufficient" and the court "abused its discretion in making the property division," but he did not complain about the family law arbitration agreement and rules and addendum. Osman now appeals to this Court.

## DISCUSSION

On appeal, Osman raises three issues. First, he argues that the family law arbitration agreement and rules and the addendum are unconscionable because he was forced to waive his rights to "the making of a record" and to "any conflict of having the mediator act as arbitrator" or be held in contempt for violating the agreed temporary orders. Second, he asserts that the "forced waiving of a record" prevented him "from properly presenting his case" on appeal. Third, he claims that the "forced waiving of any conflict of the arbitrator first acting as mediator" prevented him "from properly presenting his case" on appeal because "[e]ven if a

5

record was made . . . anything the arbitrator learned at mediation would continue to be confidential and not part of the appellate record, although the arbitrator could use that information in making his award."

Our rules of appellate procedure, however, require that as a "prerequisite to presenting a complaint for appellate review, the record must show that":

(1)     the complaint was made to the trial court by a timely request, objection, or motion . . .; and

(2)     the trial court:

(A)     ruled on the request, objection, or motion, either expressly or implicitly; or

(B)     refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tex. R. App. P. 33.1(a). "Important prudential considerations underscore" this rule of preservation, *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003), making this rule "technical, but not trivial," *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 518 (Tex. 2018) (quoting *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014)). "This rule 'conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds,' promotes 'fairness among litigants' by prohibiting them from surprising their opponents on appeal, and furthers 'the goal of accuracy in judicial decision-making' by allowing the parties to 'develop and refine their arguments' and allowing the trial court to 'analyze the questions at issue.'" *Id.* at 510 (quoting *In re B.L.D.*, 113 S.W.3d at 350); *see Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 830 (Tex. 2012) ("Failing to [preserve error] squanders judicial resources, decreases the accuracy of trial court judgments and wastes time the judge, jurors, lawyers, and parties have devoted to the case."). "The core principle underlying error-preservation requirements is that the

trial court should be given the opportunity to correct potential errors before the case proceeds on appeal." *Majeed v. Hussain*, No. 03-08-00679-CV, 2010 WL 4137472, at \*3 (Tex. App.—Austin Oct. 22, 2010, no pet.) (mem. op.) (citing *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999)). To protect these important prudential considerations—including those of judicial economy—we may review the record sua sponte for preservation of error. *See* Tex. R. App. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review . . . ."); *Federal Deposit Ins. v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) ("When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue."); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (describing error preservation as "threshold to appellate review"); *In re C.O.S.*, 988 S.W.2d at 765 ("Generally, our civil rules of procedure and our decisions thereunder require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment."); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991) (noting that court of appeals raised preservation of error issue sua sponte and evaluating merits of court of appeals's decision of whether error was preserved).[3]

Here, the record does not show that Osman's complaints at issue in this appeal were timely made. *See* Tex. R. App. P. 33.1(a)(1). The October 30, 2018 application to vacate the arbitrator's amended award—the only place in the record where the complaints were putatively raised to the trial court—was filed under subsection 171.088(a)(1) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(1) (providing for vacatur of arbitration award if "award was obtained by corruption, fraud, or other undue

---

[3] Additionally, in her response brief to this Court, Sara specifically complained that Osman did not preserve error as to his third issue and also complained that Osman "present[e]d nothing for review" as to all his appellate issues because he "has not identified for this Court a single error - not one - committed by Judge Sulak in the parties' decree of divorce," which could be construed as a complaint that Osman did not obtain a ruling on these issues to preserve error.

7

means"); *Hoskins v. Hoskins*, 497 S.W.3d 490, 494–96 (Tex. 2016) (describing section 171.088 as "exclusive" and holding that "a party may avoid confirmation only by demonstrating a ground expressly listed in section 171.088"). The specific complaint was that the award was obtained by undue means because the family law arbitration agreement and rules "constituted essentially an adhesion contract" and "was procedurally unconscionable" by depriving Osman of "his right to have the arbitration proceedings recorded" when "he had no choice but to accept." The application states that it was timely in compliance with subsection 171.088(b) because "it is being made not later that [sic] the 90th day after the date of delivery of a copy of the award to Osman." *See* Tex. Civ. Prac. & Rem. Code § 171.088(b). But subsection 171.088(b) also states that, in contrast to applications made under subsections (a)(2)–(4), "[a] party must make an application under Subsection (a)(1) not later than the 90th day after the date the grounds for the application are known or should have been known." *Id.* Here, the application was filed more than 90 days from July 18—the date Osman was presented with the alleged "adhesion contract" that he "had no choice but to accept"—and was therefore untimely as to the complaints raised "under Subsection (a)(1)."[4]

---

[4] Osman also stated in his application that "the Arbitrator exceeded his power and conducted the arbitration hearing in a manner that substantially prejudiced the rights of Osman" and that "by presenting the parties with rules that required the parties to waive their right to have the arbitration proceedings recorded, the Arbitrator exceeded the scope of his powers." *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(3)(A) (providing for vacatur of award if arbitrators "exceeded their powers"), (D) (providing for vacatur of award if arbitrators "conducted the hearing, contrary to Section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party"). Although these complaints may have been timely as they address issues not raised "under Subsection (a)(1)," *see id.* § 171.088(b), Osman does not raise any issues in his briefing before this Court regarding the scope of the arbitrator's power or how the arbitration hearing was allegedly conducted contrary to sections 171.043–.047 of the Texas Civil Practice and Remedies Code.

Additionally, even if the application had been timely filed, the record does not demonstrate that error has been preserved. Preservation also requires one of three things: an express ruling by the trial court; an implicit ruling by the trial court; or a refusal to rule by the trial court, coupled with an objection to that refusal by the complaining party. Tex. R. App. P. 33.1(a)(2). The record contains neither an objection by Osman to a refusal to rule, if any, by the trial court nor an express ruling on Osman's application to vacate the arbitrator's amended award.[5] As to an implicit ruling, "[a]n essential element of an implicit ruling is awareness by the trial judge of the request or motion that is supposedly being ruled on." *AIS Servs., LLC v. Mendez*, No. 05-07-01224-CV, 2009 WL 2622391, at *2 (Tex. App.—Dallas Aug. 27, 2009,

---

[5] The Mother Hubbard clause in the final divorce decree does not act as an express ruling on Osman's application to vacate the arbitrator's award because a Mother Hubbard clause—to the extent that it has effect—generally operates on relief sought in claims and counterclaims. *See Mafrige v. Ross*, 866 S.W.2d 590, 590 n.1 (Tex. 1993) (noting Mother Hubbard Clause is considered "equivalent" to statement granting judgment as to all plaintiff's claims or statement that plaintiff takes nothing), *overruled by Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001) ("We no longer believe that a Mother Hubbard clause in an order or in a judgment issued without a full trial can be taken to indicate finality. We therefore hold that in cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties."). Osman's application, which is to be decided as a motion, is not the equivalent of a pleaded claim or counterclaim and therefore did not need to be resolved for a judgment to become final. *See Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 430 (Tex. App.—Dallas 2004, pet. denied) ("[A]pplications to confirm or vacate an arbitration award should be decided as other motions in civil cases; on notice and an evidentiary hearing if necessary."); *cf. Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000) ("[A] judgment does not have to resolve pending sanctions issues to be final because a motion for sanctions 'is not a pleading that frames issues which must be resolved in a final judgment.'" (quoting *Jobe v. Lapidus*, 874 S.W.2d 764, 766 (Tex. App.—Dallas 1994, writ denied))). Thus, we do not interpret the Mother Hubbard clause in this final divorce decree as a ruling on the application. *Cf. Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 488 (Tex. App.—Tyler 2016, no pet.) ("[A] Mother Hubbard clause in the judgment does not act to show the trial court ruled on objections to the summary judgment evidence."); *Well Sols., Inc. v. Stafford*, 32 S.W.3d 313, 317 (Tex. App.—San Antonio 2000, no pet.) (holding error was not preserved by Mother Hubbard clause because "[a] Mother Hubbard clause operates on claims, not objections to summary judgment evidence").

no pet.) (mem. op.). An application to vacate an arbitration award is to be treated as a motion in civil cases. *See Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 430 (Tex. App.—Dallas 2004, pet. denied). And "[t]he mere filing of a motion does not ordinarily give rise to an inference that the trial judge is actually aware of it." *In re S.H.V.*, 434 S.W.3d 792, 801 (Tex. App.—Dallas 2014, no pet.) (citing *Mendez*, 2009 WL 2622391, at \*2); *see Spears v. Falcon Pointe Cmty. Homeowner's Ass'n*, No. 03-14-00650-CV, 2016 WL 1756486, at \*2 (Tex. App.—Austin Apr. 28, 2016, no pet.) (mem. op.) (collecting cases for proposition that "[m]erely filing a motion with a trial court clerk does not establish that the motion was properly presented to the trial court"); *Johnson v. Mohammed*, No. 03-10-00763-CV, 2013 WL 1955862, at \*4 (Tex. App.—Austin May 10, 2013, pet. dism'd w.o.j.) (mem. op.) (collecting cases for proposition that "[a] trial court is not required to consider or rule on a motion that has not been called to its attention"); *cf. Cruz*, 364 S.W.3d at 829, 831 (noting that error preservation inquiry "focuses on the trial court's awareness of, and opportunity to remedy, the problem" and that "trial court awareness is the key"). In this case, the record does not show that the trial court was aware of Osman's application to vacate the arbitrator's award or that Osman set the application for a hearing or took any other action to call the application to the trial court's attention. We therefore cannot infer an implicit ruling on the application. *See In re S.H.V.*, 434 S.W.3d at 802 (noting that reporter's record shows no attempt to bring motion to trial judge's attention and nothing in record shows trial judge was aware of motion; thus, "[b]ecause the record does not show that the trial judge was aware of the motion, it necessarily follows that we also cannot infer an implicit ruling on it"); *cf. Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (noting that

10

ruling is implied because implication was "clear" (quoting *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003))).[6]

Finally, even if the application had been timely filed and the trial court had made a ruling on the application, Osman does not explain why he had the "right to have the arbitration proceedings recorded," a right that he allegedly waived by signing the family law arbitration agreement and rules and addendum. As dictated by statute, "[u]nless otherwise provided by the agreement to arbitrate, a party at the [arbitration] hearing is entitled to: (1) be heard; (2) present evidence material to the controversy; and (3) cross-examine any witness." Tex. Civ. Prac. & Rem. Code § 171.047. This statutory provision does not provide a right to have the proceedings recorded and Osman has not pointed to an agreement or any other statutory or common law right that does so. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 (Tex. 2011) (noting that "[f]or efficiency's sake, arbitration proceedings are often informal; procedural rules are relaxed, rules of evidence are not followed, and no record is made" unless parties decide otherwise). As to his other issue regarding the arbitrator also serving as the mediator, this issue was not raised in the application or anywhere else in the record.[7] Thus, even if alleged error had been preserved as to any issues raised in Osman's application, alleged error was not preserved as to Osman's third

---

[6] Rule 33.1(b) provides, "In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, unless taking evidence was necessary to properly present the complaint in the trial court." Tex. R. App. P. 33.1(b). To the extent that rule 33.1(b) would apply to Osman's complaints addressed in his application, Osman did not raise these complaints in his motion for new trial to implicate rule 33.1(b).

[7] For example, Osman argues in his brief before this Court that this "allowed potential bias, rather than having an impartial arbitrator." *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(2)(A) (providing for vacatur of award if rights were prejudiced by "evident partiality by an arbitrator appointed as a neutral arbitrator"). But Osman's application to vacate the arbitrator's award did not raise any grounds identified under subsection 171.088(a)(2).

11

issue—this complaint was neither raised to the trial court, timely or otherwise, nor ruled upon. *See* Tex. R. App. P. 33.1(a); *see also Jefferson County v. Jefferson Cnty. Constables Ass'n*, 546 S.W.3d 661, 665 (Tex. 2018) (citing *Black v. Shor*, 443 S.W.3d 154, 163 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied), for proposition that "party seeking to vacate an arbitration award waives on appeal any grounds not presented to the trial court" and *Hooper v. Brinson*, 2 Tex. 185, 188 (1847), for proposition that "party's failure to object to the arbitrators' award on a specific ground precluded the party from asserting the ground as error on appeal").

## CONCLUSION

Because we conclude that Osman did not preserve alleged error as to his issues raised on appeal, we overrule his issues and affirm the trial court's final divorce decree.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   July 22, 2021